on behalf of Mr. Wong, who is the Petitioner Impellant in this case. Your Honors, the Hong Kong Extradition Agreement is not constitutional. The President passed the agreement as a treaty under the Treaty Clause, but the Treaty Clause is limited to United States agreements with other sovereign entities, and Hong Kong is not a sovereign. And what do we do with the treaties with Indian nations? The treaties with Indian nations, I think, are instructive. They show that the Treaty Clause is limited to agreements between the United States and sovereign entities. And I refer the Court, as I have in my papers, to the 1871 Act, the Indian Appropriations Act. And in that Act, Congress states that from this moment, Indian tribes will not be considered independent nations with whom the United States can enter into treaties. Now, I think that's very important, because in the 1871 Act, Congress does not state that one simply cannot enter into treaties with Indian tribes. It states that the Treaty Clause is inappropriate for entering into treaties with Indian tribes, because they are not independent, because they are not sovereign. What about the treaties before then? The treaties before then, Your Honor, were made on the basis that those tribes were sovereign, that before 1871, and I know that numerous commentators agree with this view, that before 1871, Indian tribes were considered sovereign entities with whom the United States could enter into treaties. There were Supreme Court cases to the same effect. But after 1871, the reality was that Indian tribes were no longer sovereign entities, and they were therefore incapable of making treaties under the Treaty Clause. Rather, the United States could not use the Treaty Clause to enter into treaties with them. So therefore, from 1871 on, all acts dealing with Indian tribes were done by Congressional Executive Agreements. They were no longer done by treaty. And the reason why, again, is because the 1871 Act tells us why, because they were no longer considered independent nations. Treaties prior to 1871 were still valid, because those treaties had been made when those Indian tribes were still sovereign. But the President could have passed this extradition agreement in compliance with the Constitution. The President could have passed this extradition agreement as a Congressional Executive Agreement approved by both houses of Congress. The President traditionally uses the Congressional Executive Agreement to enter into agreements with non-sovereign entities. But instead, this is the first example in history where the United States, the President, has used the Treaty Clause to enter into an agreement with an entity that has never been sovereign. And it goes against the entire meaning and history of the Treaty Clause to interpret it as including agreements between the United States and non-sovereign entities. And I noted in my papers from 1787, Your Honors, delegates to the Constitutional Convention, the framers in the Federalist Papers, the foremost commentators of the day, Emmerich de Wattel and others, noted that treaties were agreements between sovereign entities, and the Treaty Clause was limited to the United States' agreements with other sovereign entities. At the time the United States first entered, or I suspect you would say attempted to enter into a treaty with Hong Kong, who was the sovereign? The Hong Kong Extrajudicial Agreement was the first time, Your Honor. So in 1997, the United Kingdom was still the applicable sovereign. And at that time, could the United States have entered into a treaty with the United Kingdom? The United States actually did previously... The answer is yes, isn't it? Whether they could enter into a treaty with the United Kingdom, yes, Your Honor. And subsequent to the handover to China, could they have entered into a treaty with China? Yes, Your Honor. But what do we make of the fact that both the United Kingdom before the handover and China after the handover specifically agreed to and accepted the treaty? Well as a matter of fact, Your Honor, there is nothing in the record to show that the PRC actually did approve this Hong Kong Extradition Agreement. We're supposed to disbelieve the transmittal letter from the Secretary of State? No, Your Honor, but as in the successor cases that I've...succession cases that I've noted in my papers, where the courts examine, and these are numerous Ninth Circuit cases, where the court examines whether a foreign successor sovereign is bound by an extradition agreement entered into by a predecessor foreign sovereign, what the courts examine to determine what the successor foreign sovereign's position is, they examine the letters, they examine the documents of the successor foreign sovereign. And that is what is appropriate in this case. Not relying on a hearsay statement of the Secretary of State saying that a purported agent has allegedly approved this agreement, but by examining the documents and letters of the PRC to determine whether the PRC has actually approved this agreement. But beyond matters of fact, Your Honor, there are legal issues here as well. And that's that under the Treaty Clause, a treaty is an agreement executed between the sovereigns. And in 1997 and 1998, when this agreement was negotiated and executed, it was only an agreement between the United States and Hong Kong. There's no mention of the PRC. There's no signature by the PRC. It's purely an agreement between the United States and Hong Kong. And it is not a treaty, because it is not executed by the sovereign nation that is now involved, supposedly, the PRC. What's more, it also presents a difficulty with respect to the language of the Treaty Clause itself. The Treaty Clause suggests that the President makes an agreement, and that same agreement is approved by the Senate, that that same agreement gets the advice and consent of the Senate. And that, again, is not what happened in this case, Your Honor. The Hong Kong extradition agreement was made by the President before reversion, when the President was the sovereign that controlled Hong Kong. After reversion, the Senate gave its advice and consent to this agreement. But at that time, the sovereign was the PRC. And I would submit to the Court that the change in sovereigns reflects completely different agreements. As I noted in my papers, the practical considerations involved in having the PRC as a party to this agreement are extremely extreme. It could allow the PRC to make extradition requests from the United States to send people to Hong Kong. It could also allow people that are extradited to Hong Kong to be turned over to the PRC. So I would submit to the Court that there are prudential considerations militating against viewing the PRC as a party to this agreement. But, again, I would ask the Court to focus on the facts, that there is nothing in the record to characterize the PRC as a party to this agreement. There's no statement. There's no document from the PRC itself. I've also noted that treaties should be interpreted according to the ordinary rules of statutory construction that apply to contracts. And certainly, if this were an ordinary contract, an ordinary contract could not be amended to include a third party just on the say-so of one of the parties to the contract. We would look to see whether the third party had actually produced some sort of document or statement binding itself to the agreement between the two parties. Again, Your Honors, this is not something that's been submitted in the record here. All we have is a hearsay statement from the Secretary of State regarding the PRC's position. We have no document or statement from the PRC itself. With respect to the meaning of treaty under the Constitution, again, since 1787, the treaty has meant an agreement between the United States and sovereign entities. After the passing of the Constitution, numerous commentators, Justice Story, Alexander Hamilton, these are all people that have agreed with the interpretation of treaty to mean an agreement between the United States and sovereign entities. And again, the 1871 Act, I think, is very illustrative of what the President and Congress believed in 1871. They did not state, again, that the Indian tribes could not enter into treaties under the Treaty Clause just for no reason at all. They stated specifically in this law, a law that's still on the books, 25 U.S.C. Section 71, that they could not, Indian tribes could not enter into treaties with the United States because they were no longer considered independent. They were no longer considered sovereign. So again, I think this is a very important view of what the President and Congress believed in 1871, that again, the Treaty Clause was limited to agreements between the United States and other sovereigns. And even today, modern commentators and courts continue to hold the same view. They have stated that the United States can't enter into treaties with the European Union or subdivisions of the United Nations. Again, because they are not sovereign entities, the Treaty Clause was meant for agreements between the United States and other sovereigns. Roberts. I think we understand your argument. You've got a good bit of time left. Why don't we hear from the government at this time, and you can respond. Thank you for your argument, counsel. Krauss. Good afternoon, Your Honor. Smart Krauss for Respondent Adam Torres. The Court should decline to exercise jurisdiction over the appeal because Petitioner presents a non-justiciable political question. In effect, what the Petitioner would have this Court do is invade upon the Executive's recognition power by suggesting that the Hong Kong Special Administrative Region is not a proper political entity, it's not a proper treaty partner. Because the definition, what constitutes a treaty under Article II is something that has been designated to the political branches, this Court should decline to exercise jurisdiction and dismiss the appeal. Are all issues determining the validity of treaties political issues or legal issues? Your Honor, the way that the, I think the proper analysis is the one adopted by the Eleventh Circuit in that what constitutes. Could you tell me what are the other? What would be an example of a proper? Just give me what are the other. Oh, I'm sorry. It would be proper, for example, for this Court to determine whether, in fact, a two-thirds majority of the Senate had approved the treaty or whether it was submitted by the President and whether those certainly. Well, let me give you an example. Suppose the United States entered into a treaty with Bulgaria that the writ of habeas corpus shall be eliminated, valid treaty? Well, I think the... Who determines whether that's a valid treaty or not? I think there's a distinction here. The first issue is whether a treaty has been entered into with Bulgaria and that would present a non-judicial question. The second issue about whether the treaty provisions can be enforced, that is a separate issue and to that end... That's a good question. That's got to be enforced and it cannot be enforced if it's made with a subsidiary. No, Your Honor, perhaps I've gone, I've misspoken. It can't be enforced by a subsidiary. Your Honor, the treaty clause does not include... Not if China, just the one who enforces it can't. Your Honor... And China didn't enter into any kind of an agreement with the United States. Your Honor, I think that there's two separate issues that I'd like to address. Well, there are not. There are enforceability because you raised the issue. Your Honor, if I could address, I think that there are two issues if I could address them. The first is whether the Constitution precludes the government from entering into an agreement with a sub-sovereign. And I think the answer is there's nothing in the Constitution that precludes it. I think that the second concern that you've raised is a practical concern, namely if China does not want to be bound by the treaty, if it wants to obstruct Hong Kong's honoring its own treaty obligations, to what extent do we have a treaty that we should honor? And those practical considerations, I think, again, should be devoted to the political branches. Do you identify a treaty other than one with an Indian nation that was with a sub-sovereign or something other than a recognized sovereign government? An Article II treaty? As identified by Petitioner, there is the statute, it was an agreement. You could call it sort of colloquially as a treaty with the tribunal on war crimes. I guess technically that's a statute, but you could colloquially call that a treaty. If the court's question is, in what instance in American history has the President submitted a treaty for a two-thirds majority rule by the Senate, I have not been able to identify anything other than the Indian treaty. Could the United States enter into a treaty with the island of Sardinia? I'm not aware of it. I could certainly check into that and submit a briefing on that. I was not able to identify any other authority. I can't understand you. I didn't hear what you said. Oh, I apologize. The court asked as to whether I had been able to determine whether the island of Sardinia had entered into a treaty with the United States. No, no, could, but it's a hypothetical. Oh, could. I apologize. Could the United States of America enter into an extradition treaty with the island of Sardinia? I don't think the Constitution would preclude the President from entering into a treaty with two-thirds approval of the Senate of entering into such an extradition agreement or a treaty in general. I don't think it's constitutionally prohibited. I think it gets back to Judge Ferguson's question as to whether it would be pragmatic and whether it would be sensible when the country as a whole might obstruct compliance with that treaty. But that's a political consideration, one which would measure against, perhaps, the would never allow the Hong Kong Special Administrative Region to comply with its treaty obligations, then perhaps justifiably people could question the President and the Senate and say, why did you enter into such a treaty? But that's something that's not really before the court. It's political determination. They've made the political calculus that it's appropriate to enter into this for pragmatic reasons. And our potential problems down the road in ensuring treaty compliance is a political consideration not worthy of deciding whether to invalidate the treaty. Again, a political consideration. The USAID argues that there's no proof of record that this treaty was accepted by, ratified by, embraced by China. What's your response? I think that's not true. As set forth... It's true? It is not true. You're saying it's not correct. It's not correct. I think that what is correct... What is in the record that shows that? In the record is the statement during the legislative history of a senator describing what happened with the treaty, that the People's Republic of China had approved it. What is in the record is the transmittal letter from the Secretary of State. And what the court can also consider is what other courts have recognized, namely that in enacting the treaty, for example, in footnote six of the Chung opinion out of the Second Circuit, that court recognized that the United States, acknowledging concerns that the People's Republic of China had with the language of the treaty, adopted certain rhetorical changes, namely styling the treaty as an agreement and describing the subject matter of it as being surrender rather than extradition. So those are just a few examples of what the record and what the legislative history and the law... What did it say? Did it say that we will enforce this, quote, treaty that was entered into between Hong Kong and the United States? Did it say that or not? In other words, what did the People's Republic of China... Yes or no? That's all I want to know. No, I'm just trying to understand the court's question. Is the court asking what did the People's Republic of China say with respect to the extradition agreement and whether it would consider itself bound by it? What were its duties? What did the People's Republic of China recognize its duties when it authorized Hong Kong to sign that treaty? That's my question. There is no mention of that because there are no duties in the agreement for the People's Republic of China. Unenforceable, then, isn't it? It's an unenforceable. If China's not going to enforce it, it's unenforceable. China doesn't have any duty. People's Republic of China doesn't have any duties under the extradition agreement. So one can't enforce something against the People's Republic of China. It has no duty of surrender and so forth. Certainly the agreement was ratified with the approval of the People's Republic of China because it has clearly expressed some concerns that it had. We don't know that. Your Honor... We don't know what the obligation of the People's Republic of China is. We do know what the obligation of the People's Republic of China is because the extradition agreement does not provide for any obligations for the People's Republic of China. The four corners of the document do not bind the People's Republic of China as having any obligations under the extradition agreement. So in regards to... If Your Honor is asking, what can we look to in terms of determining whether the People's Republic of China will honor its obligations under the extradition agreement, I can't really respond to that. As the People's Republic of China does not have any obligations under the extradition agreement. I think the question that we're kind of searching for here is, in the ordinary sense, when you United States and the German Democratic Republic or something like that, if one asks the questions, what are the obligations of the agreeing nations? You could go to the document and say, okay, the obligation of the United States is this. The obligation of Germany is this. But you tell us in this circumstance that the answer to that question as per China is nothing. Well, Your Honor, the... China has no obligation under this treaty. The agreement is between the Hong Kong Special Administrative Region and the United States. So those are the obligations that are defined for those two parties. In determining whether Hong Kong is complying with those obligations or not, we can look to the plain terms of the document. The problem, however, Your Honors, is that the Supreme Court has said repeatedly that whether one side of the agreement decides that it's bound or not really does not call into question the validity of the agreement. In Terlinden v. Ames, for example, Italy was refusing to extradite its citizens to the United States. And so the petitioner in that case claimed that the treaty was no longer valid, having been basically repudiated by one of the parties. Have you asked the President's legal officials and lawyers whether or not a treaty has to be made between sovereigns? The... Have you or haven't you? You know, my questions are yes or no. No. I understand. I personally have not. However, the Department of State, in submitting the formal papers to the... and what was filed with the district court, outlines with a lawyer with the State Department saying that there is a valid treaty. The treaty is listed in the treaty's enforced publication issued by the Department of State. So... You're an assistant United States attorney here in the Central District. That's correct. Was the brief run through the Department of Justice? That's correct. I sent it to the Office of International Affairs. So in addition to conferring with the State Department, I've also conferred with the Department of Justice in DC. The Department of Justice has nothing to do with this, you say, if you say it's a political question. The question then becomes the President's only. And have you asked the President whether or not a treaty has to be made? I have not asked the President. I have not asked... You've done that, don't you? Your Honor, I have not asked the President. However, I have conferred with the Department of State obliquely and the Department of State is the one that ultimately makes the decision about if his extradition is certified, whether or not he will be extradited to Hong Kong. And the State Department has indicated through legal briefs filed with the district court that there is a treaty enforced. It is published, the Hong Kong Extradition Treaty, as a treaty enforced and it is generally recognized as a treaty enforced. And it has been enforced in the Second Circuit and in the First Circuit. So this is a treaty that has been consistently applied both by courts and by the executive branch. It is a treaty that has been acknowledged by the legislative branch as a treaty that is enforced. I think we understand your argument. Let's hear from Mr. Tse if he has any response to what you've said. I hope I'm pronouncing your name correctly. It's Tse, Your Honor. Tse, sorry. I hope you're going to say why we shouldn't agree with the Second Circuit. Yes, Your Honor. The Second Circuit in Chung was actually addressing a different question. It was addressing a statutory question rather than a constitutional question. The Second Circuit was analyzing whether Hong Kong could qualify as a foreign government or a foreign country under Section 3184 to confer jurisdiction to the magistrate judge to certify extradition. This is a completely different issue. This is not a statutory issue. This is a constitutional issue. We're not examining the words foreign government or foreign country. We're examining the words treaty. And I think, in fact, if one looks at the Second Circuit's decision, it does touch on the word treaty. And its argument that treaty is not limited to sovereign entities is very thin indeed. And what the Second Circuit states is that a treaty can include non-sovereign entities because of the Indian tribe analogy. Basically, the Second Circuit analogizes Hong Kong to Indian tribes and nations and states that since the United States entered into treaties with Indian tribes and nations and assumes that those Indian tribes and nations were non-sovereign, well, that means that the treaty clause can also include non-sovereign entities. But that analogy is simply incorrect. Because, as the 1871 Act points out, from after 1871, Indian tribes were no longer considered sovereign entities and treaty making under the treaty clause ended. Well, curious thing. Sovereign is a rather slippery term for various reasons. And the Indian tribes are considered sovereign even today. So in some context, they are. Sometimes they aren't. It's not a... You're inviting us to create a conflict with the Second and I understand now the First Circuit. Why should we do it? I think you put in a rather learned argument. But what's the point of it all? Well, Your Honor, I don't think the First Circuit has reached this issue at all. But as I've noted to this Court, the Second Circuit has only relied really on the Indian Act and the only other evidence they have for a non-sovereign, for agreements between the United States and non-sovereigns to be included in the treaty clause is an Oxford English Dictionary definition from the 1850s. This is not, I think, a convincing countervailing argument to what we've submitted in our papers, which is that from the Constitutional Convention on and to 1871, that treaties under the treaty clause have really only been limited to United States agreements between sovereign entities. Mr. Krauss points out... We know, I think, as much as we can, that that is historically correct, that historically treaties have been between sovereign here and sovereign there. Has any court said that's what the Constitution means when it says treaty? No court, Your Honor. But President and Congress certainly did in 1871 when they set up a sovereignty test and stated that Indian tribes no longer met that sovereignty test and so they could not, their agreements could not be included under the treaty clause. If a, if a, quote, treaty cannot be enforced, is it a treaty? Your Honor, I don't think it is a treaty. I think that if... It's not a contract, is it? If you can't enforce a contract, it's not a contract. Correct, Your Honor. Ordinary contracts have obligations and they have rights. Hong Kong can't enforce this treaty if the People's Republic of China enforces it for them. Correct, Your Honor. And I think that if one looks at the commentary from the Constitutional Convention, it includes treaty making with other sovereign rights, including war and peace. And the PRC, the PRC has all of those rights. It is truly a sovereign entity. Hong Kong has none of those rights. It is, and that is the reason why the treaty clause was limited at the time of the Constitutional Convention to non-sovereign entities. What's your response to the argument that what you've just described is not different materially from a transient government saying, we don't like the United States of America or we don't like what they do with respect to this penalty or that penalty, so we're not going to honor the extradition treaty? The argument is that doesn't make a treaty not a treaty. And why does the fact that there are no discernible obligations on China's part make this less than a treaty? Well, I think the fact that there are no discernible obligations, I think that points out the fact that Hong Kong is not sovereign. I think that perhaps is the reason why the President and Congress here, they made the political determination. There's a difference between an identifiable obligation on the part of a participant in a treaty and a transient government that for whatever policy or political reason says we simply don't want to abide by it. Yes, Your Honor, but I think that the political determination really is made by the President and Congress in terms of what entity is the sovereign of a region. And here, Congress and the President have made that determination. They've stated that the PRC is the sovereign over Hong Kong, that Hong Kong is not the sovereign that controls that region. And I think based on that, the Court can make the determination, the constitutional determination what the word treaty means under the Treaty Clause. I think the government would have you believe that this is a political issue, but it is not. It's an issue purely of constitutional interpretation. Can a treaty under the Treaty Clause include an agreement with a non-sovereign entity? And I think the way to interpret that is the way that other constitutional terms are interpreted, like due process and equal protection. One just doesn't look at them in the vacuum of the Constitution itself, but in terms of their original meaning and their historical application. Sort of the Justice Scalia approach, huh? I suppose it would be characterized as that. That's his approach to the Constitution. The way you interpret it, it's like a statute. You look at it and you look at it in the mind's eye of the people who enacted it. Well, not only 1787, Your Honor. It's a modified Scalia approach, if you would. Tempered by time. Tempered by time. What we have here is at least one pronouncement in 1871 that sovereignty is a test for Treaty Clause. So 100 years after the Treaty Clause is passed into law, that is still the view of the President and Congress. But for 100 years, Congress and the President dealt with the Indian tribes that were completely dependent in the first 100 years as they were in the second. They treated them as entities they could make treaties with. If you're going to look at the original intent, you've got 100 years of construing treaty to mean you can do it with subordinate powers. Your Honor, I don't think that's consistent with the 1871. No, it isn't. They're just two different approaches. But in the 18— You've got 100 years interpreting it one way. The 100 years of interpreting it that way because they were sovereign entities up until 1871. They were just as dependent. They were not, you know, you can get into a great factual argument, but they were not any more independent than the later ones. Well, Your Honor, the sovereignty— Pushed around the country. You know that. You've read the history of the Cherokees and so forth. To assume that they were sovereign in any complete sense is ridiculous. Your Honor, the sovereignty of an entity is a political determination. 1871, Congress and the President made that determination. They said— But for 100 years, they treated subordinate groups as sovereigns and as capable of making treaties. Your Honor— I think your answer is they did, but in 1871, that changed. That is correct. That after 1871, they were considered non-sovereign entities and the United States could no longer use the treaty clause to enter into agreements with them. I want to thank both counsel for bringing us a really, really interesting case. Who would have thought that in the Public Defender's Office and the U.S. Attorney's Office in the Central District, we'd be talking about issues like these? And you've both done an excellent job. Thank you very much. Thank you, Your Honor. The case just argued will be submitted for decision and the Court will stand in reciprocity.
judges: Ferguson, Noonan, Hawkins